IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                              CRIMINAL ACTION NO. 3:19-00245-11

ROBERT VON WILSON

## MEMORANDUM OPINION AND ORDER

Presently pending before the Court are Defendant Robert Von Wilson's Motion to Suppress and Supplemental Motion to Suppress.[1] *Mot. to Suppress*, ECF No. 316; *Supplemental Mot. to Suppress*, ECF No. 317. The Government filed a Response in Opposition, *see Resp. in Opp'n*, ECF No. 333, and the Court held a remote hearing on Defendant's motions on July 20, 2020, *see Mot. Hr'g*, ECF No. 341. On the record at the hearing, the Court confirmed that the defendant had an opportunity to consult with counsel and consented to the remote proceeding. For the reasons set forth below and those already explained on the record, the Court **DENIES** the motions.

### I. BACKGROUND

Although Defendant's motions arise out of a search conducted on June 6, 2019, the impetus for that search has its roots in a long-running investigation of a drug trafficking organization suspected of distributing methamphetamine and fentanyl in the Huntington area. *Resp. in Opp'n*, at 1. During the course of the investigation, members of the Huntington Police Department identified two residences used by the organization to aid in their distribution efforts. *Hunter Aff.*,

---

[1] The Motion and Supplemental Motion are functionally identical, though the Supplemental Motion includes a copy of the challenged search warrant as an attachment. *See Def.'s Ex.*, ECF No. 317-1.

ECF No. 333-1, at 9. Officers assigned to the Huntington Violent Crime Drug Task Force executed a search warrant at the first of these residences—located at 1100 9th Avenue in Huntington—on April 17, 2019, and arrested an individual in possession of over 100 grams of suspected fentanyl and firearms. *Id.* This arrest led officers to another Huntington address that same day—935 Eutaw Place—where they executed a search warrant and discovered drug trafficking paraphernalia and 8.5 grams of suspected crystal methamphetamine. *Id.*

About a month later, officers executed a third search warrant at 1223 26th Street. *Id.* at 10. Two individuals—identified as Nikki Maynard and Shawn Hunter—were present at the residence, along with eight grams of crystal methamphetamine, digital scales, and a firearm. *Id.* Maynard, who was a member of the drug trafficking organization under investigation, represented that she had been involved with the group for approximately four months. *See id.*; *see also Resp. in Opp'n*, at 3 n.2. She further claimed that she had obtained crystal methamphetamine on one occasion from the "900 block of Eutaw Place," but that "1235 25th Street [was] the most recent stash house for the" organization. *Hunter Aff.*, at 10. A week after receiving this information, Sergeant Paul Hunter of the Huntington Police Department reviewed a cellular telephone extraction from Maynard's phone that confirmed she and other members of the organization "had been involved in drug trafficking of crystal methamphetamine for at least [five] months in the Huntington area." *Id.*

On May 28, 2019, Sergeant Hunter repeated much of the above information in an Affidavit and Complaint for a Search Warrant submitted to Cabell County Magistrate Ron Baumgardner. *See Aff. & Compl.*, ECF No. 333-1. While he did not identify Maynard by name, he noted that a "co-conspirator" had confessed his or her involvement in the drug trafficking organization and the purchase of crystal methamphetamine from the 900 block of Eutaw Place. *Hunter Aff.*, at 10. He also noted that the co-conspirator's cell phone data confirmed his or her participation in the drug

-2-

trafficking organization, and that he or she had identified the 1235 25th Street address as the "most recent stash house." *Id.* Hunter described the house as "a white single[-]family dwelling with a green roof," and attached a photograph of the structure to his application for a warrant. *Id.* While he requested the "authority to conduct a no knock search warrant at the address of 1235 25th Street" in his "No Knock Search Warrant Statement," the final paragraph of his Affidavit contained a mistaken request to seize drugs and paraphernalia at "3007 4th [A]venue." *Id.* at 10–11. Baumgardner nonetheless issued the warrant, and officers conducted a search of the 1235 25th Street residence on June 6, 2019. *Resp. in Opp'n*, at 4. Along with the defendant, officers located 1.7 kilograms of methamphetamine and a loaded firearm inside the house. *Id.*

Though initially charged by West Virginia authorities, the United States later indicted Defendant for conspiracy to distribute 500 grams or more of a methamphetamine mixture in violation of 21 U.S.C. § 846 and possession with the intent to distribute 500 grams or more of a methamphetamine mixture in violation of 21 U.S.C. § 841(a)(1). On June 29, 2020, Defendant moved to suppress the evidence seized at the 1235 25th Street residence as the fruit of an illegal search. *See Mot. to Suppress*, at 1. The Court held a hearing on the motions on July 20, 2020, at which counsel for the Government appeared in person and the Defendant and Defendant's counsel appeared remotely.[2] *See Mot. Hr'g*, at 1. Sergeant Hunter testified as to his involvement in this case, and both parties offered argument before the Court denied the motions to suppress. It is to the well-settled law that dictates this outcome that the Court now turns.

---

[2] The Court confirmed on the record that the defendant had an opportunity to consult with counsel and consented to the remote proceeding.

## II. LEGAL STANDARD

In relevant part, the Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In considering whether a warrant meets this threshold, reviewing courts do not "conduct a de novo determination of probable cause." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Rather, their task is limited solely to "to determin[ing] whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Id.*; *see also United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (reasoning that reviewing courts must afford "great deference" to the probable cause determinations of neutral magistrates). Given this limitation, "a reviewing court must consider only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

"A probable cause assessment requires the issuing judge to decide whether, given the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). By its plain terms, this standard does not require absolute certainty that evidence will be discovered. *United States v. Gary*, 528 F.3d 324, 327 (4th Cir. 2008). Instead, an officer's oath or affirmation in support of a search warrant need only "provide the magistrate with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 236.

As a final matter, the Constitution "says nothing about suppressing evidence obtained in violation" of its commands. *Davis v. United States*, 564 U.S. 229, 236 (2011). Nevertheless, "all

evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court regardless of its source" pursuant to the exclusionary rule. *Mapp v. Ohio*, 367 U.S. 643, 654 (1961).

### III. DISCUSSION

Defendant advances what are essentially two arguments in support of his motions: first, that the mistaken inclusion of "3007 4th [A]venue" in Sergeant Hunter's Affidavit means it is insufficiently particularized to support a search, and second, that references to the co-conspirator[3] do not establish his or her reliability. Both arguments fail.

First, the fact that Sergeant Hunter requested to search the incorrect address at one point in his Affidavit is not enough to invalidate an application that otherwise consistently and unambiguously refers to the 1235 25th Street residence. The unnamed co-conspirator identified 1235 25th Street as the drug trafficking organization's current "stash house," and Sergeant Hunter described the external appearance of the home with particularity in his Affidavit. *Hunter Aff.*, at 10. He included a picture of the residence as part of his application for a warrant, and "request[ed] the authority to conduct a no knock search warrant at the address of 1235 25th Street" in his "No Knock Search Warrant Statement." *Id.* at 3–4. Inasmuch as a warrant is valid "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended," *Steele v. United States*, 267 U.S. 498, 503 (1925), there can be little doubt that the search warrant at issue here survives constitutional scrutiny. Sergeant Hunter knew with certainty which property was to be searched, and any reasonable magistrate reviewing his Affidavit would come to the same conclusion. *See United States v. May*, No. 5:08-CR-331-FL, 2009 WL 928386, at *8 (E.D.N.C. Apr. 3, 2009), *aff'd*, 446 F. App'x 652 (4th Cir. 2011) ("Courts have

---

[3] As the Court's consideration of Defendant's motions is cabined to the four corners of Sergeant Hunter's warrant application, the co-conspirator's actual identity will not be employed as part of its analysis. *Wilhelm*, 80 F.3d at 118.

repeatedly held that an incorrect address, including an incorrect house number, does not invalidate a warrant where there is some other reasonably specific description of the property."). Even "where a warrant contains a technical inaccuracy, a sufficient description of the premises, especially where the executing officer had knowledge of the particular place to be searched, will meet the Fourth Amendment's particularity requirement." *United States v. Watts*, 352 F. App'x 784 (4th Cir. 2009). Sergeant Hunter has provided such a description here; to hold otherwise would represent an egregious elevation of form over substance that runs counter to the interests the Fourth Amendment serves to protect.

Defendant's second argument is more general, and centers on the reliability of the co-conspirator's identification of 1235 25th Street as a "stash house." He contends that Sergeant Hunter did not provide sufficient indicia of the co-conspirator's reliability in his affidavit to allow a neutral magistrate to conclude that probable cause for a search existed. As with his first argument, Defendant's reasoning is fatally flawed and often appears determined to ignore the substantial evidence of reliability contained in Sergeant Hunter's Affidavit.

In considering whether an informant's statements are sufficient to constitute probable cause, courts consider "if, in view of the totality of the circumstances, the judicial officer is satisfied with the veracity and basis of knowledge of the informant." *United States v. Loy*, 569 F. Supp. 2d 601, 608 (N.D.W. Va. 2008). Looking to the totality of the circumstances before the Magistrate in this case, the Court finds several pieces of information contained in Sergeant Hunter's Affidavit to be particularly relevant. First, the co-conspirator—while unnamed—is not an "anonymous" tipster in the ordinary sense of the term. Indeed, merely identifying the co-conspirator as such bolsters the reliability of any information he or she offers. *United States v. Miller*, 925 F.2d 695, 699 (4th Cir. 1991) (reasoning that an "informant's interest in obtaining

lenience create[s] a strong motive to supply accurate information"). As a member of the drug trafficking organization under investigation, any statements by the co-conspirator are necessarily more reliable than those of an entirely unnamed tipster.

Of course, another piece of information contained in the Affidavit lends further support to the veracity of the co-conspirator's statements—namely, that he or she had purchased crystal methamphetamine from a location near one the officers had already searched and determined was connected with drug trafficking operations. "The degree to which [the] informant's story is corroborated may . . . be an important factor" in the probable cause analysis, and here the co-conspirator's apparently truthful statement regarding her purchase of controlled substances at the Eutaw Place address further corroborates her own story. *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004).

Finally, while "'there is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible,'" Sergeant Hunter took the additional step of examining text data from the co-conspirator's cell phone to confirm that he or she had indeed been involved in drug trafficking operations in Huntington for "at least [five] months." *United States v. Perez,* 393 F.3d 457, 462 (4th Cir. 2004) (quoting *United States v. DeQuasie,* 373 F.3d 509, 518 (4th Cir. 2004)). Such additional corroboration serves to significantly reinforce the co-conspirator's reliability.

At bottom, Sergeant Hunter presented the Magistrate with a substantial basis (and, really, substantial bases) to authorize a search of the 1235 25th Street residence. Guided by the proposition that "a finding of probable cause does not require absolute certainty," the Affidavit contains ample evidence to support the issuance of a warrant. *Gary*, 528 F.3d at 327. Defendant's motions are accordingly denied.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motions, ECF Nos. 316, 317, and **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: July 21, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE